## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KACIE M. BREEN**                                    **CIVIL ACTION**

**VERSUS**                                                  **No. 22-3962**

**AARON KNAPP, ET AL.**                          **SECTION I**

### ORDER & REASONS

Before the Court is a motion[1] by plaintiff Kacie Breen ("Kacie") for a temporary restraining order. Defendant Aaron Knapp ("Aaron")[2] opposes[3] the motion. For the reasons below, the Court denies the motion.

## I.    FACTUAL BACKGROUND

In 2015, Kacie shot and killed her husband, Wayne Breen, in their St. Tammany Parish home. Law enforcement determined that she acted in self-defense. Kacie was the named beneficiary on her husband's life insurance policies. Two insurance companies which held policies on Wayne Breen's life commenced interpleader actions pursuant to Rule 22 of the Federal Rules of Civil Procedure in the Eastern District of Louisiana to determine to whom the insurance proceeds would be paid. The two cases were consolidated as *Pruco Life Insurance Co. v. Breen*, E.D. La. Case No. 15-3250 c/w 15-6946.

---

[1] R. Doc. No. 4.
[2] Defendants Sean Breen and the Louisiana First Circuit Court of Appeal are not represented and have made no appearances in this action.
[3] R. Doc. No. 15.

In the interpleader action, five of Wayne Breen's children from a prior marriage and the administrator of his estate sought to receive the benefits of the insurance policies. *Pruco Life Ins. Co. v. Breen*, 289 F. Supp. 3d 777, 779 (E.D. La. 2017). Before trial, Aaron, another adult child of Wayne Breen, though by a different mother, sought to intervene in the *Pruco* case, but his motion was denied because it was untimely.[4] In denying the motion to intervene, the U.S. Magistrate Judge also noted that Wayne Breen's other children would "adequately represent [Aaron's] interest" in the interpleader litigation.[5]

The five children who were parties to the interpleader action argued that Kacie could not receive the life insurance policy benefits because Louisiana's "slayer rule" statute, La. Stat. Ann. § 22:901(D)(1), prohibits a person who kills another from benefiting from the deceased's insurance policies. Because Kacie was the named beneficiary of the policies, "the burden of proving her disqualification under this statute rest[ed] on those seeking to negate her beneficiary status." *Pruco Life Ins. Co.*, 289 F. Supp. 3d at 779. In order to carry that burden, Wayne Breen's children needed to prove that "Kacie Breen participated in the intentional, unjustified killing of the individual insured, i.e., her husband." *Id.* at 798. After a trial, another section of this Court determined that they had not carried that burden and it concluded that Kacie was therefore entitled to the insurance money. *Id.* at 799.

---

[4] R. Doc. No. 1-8; *Pruco Life Ins. Co.*, 289 F. Supp. 3d at 778 n.4.
[5] R. Doc. No. 1-8, at 2.

The Fifth Circuit affirmed this ruling. *Pruco Life Ins. Co. v. Breen*, 734 F. App'x 302 (5th Cir. 2018) ("[W]e affirm the district court's judgment for essentially the reasons given in its Order and Reasons."). One of Wayne Breen's adult children, Sean Breen ("Sean"), then sought reconsideration from the district court, which was denied.[6]

Aaron, who had been denied intervention in the federal case, and Sean also pursued litigation in state court.[7] Both state cases at issue here were filed in 2015.[8] In one case, *Sean Breen v. Kacie Breen, et al.*, Sean and Aaron sued Kacie for wrongful death.[9] The state trial court determined that lawsuit was barred by res judicata, based on the *Pruco* decision.[10] The state trial court then dismissed the action.[11] Sean and Aaron also asserted claims in *Doctors for Women LLC v. Breen*, a concursus action to determine who is entitled to Wayne Breen's pension funds. The state trial court in that case likewise determined that the lawsuit was barred on the basis of res judicata.[12] It granted summary judgment to Kacie.[13] Sean and Aaron have appealed both of those rulings.[14]

---

[6] R. Doc. No. 1-5. Sean also sought reconsideration of the order denying reconsideration, which was likewise denied. R. Doc. No. 1-6.
[7] Facts pertaining to the state litigation are drawn from the documents provided to this Court by the plaintiff in this case, Kacie Breen. Defendants have not disputed those facts.
[8] R. Doc. No. 1-11, at 9; 1-13, at 7.
[9] R. Doc. No. 1, at 8.
[10] *Id.*
[11] *See* R. Doc. Nos. 1-12, 1-13.
[12] R. Doc. No. 1, at 9.
[13] *See* R. Doc. Nos. 1-10, 1-11.
[14] R. Doc. No. 1, at 9.

3

Oral arguments as to both cases were set to be heard in the state appellate court on October 19, 2022.[15] On October 18, 2022, Kacie filed the instant motion for a temporary restraining order, asking this Court to enjoin the state proceedings.[16] This Court held a telephone conference with counsel for Kacie and Aaron and issued an order scheduling briefing on the motion.[17]

## II.    LEGAL STANDARD

When a party seeks an injunction against a state court proceeding, the Anti-Injunction Act, 28 U.S.C. § 2283, may bar that relief. Pursuant to that Act, a federal court "may not grant an injunction to stay proceedings in a state court" unless one of the three following preconditions is satisfied: the injunction (1) is expressly authorized by Congress, (2) is necessary in aid of the federal court's jurisdiction, or (3) is necessary to protect or effectuate the federal court's judgments. *Id.*; *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 724 (E.D. La. 2012) (Fallon, J.) (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011)). These exceptions "are to be interpreted narrowly" and "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *La. Health Serv. & Indem. Co. v. Ctr. for Restorative Breast Surgery, LLC*, No. 17-4171, 2017 WL 2256765, at *2 (E.D. La. May 23, 2017) (Morgan, J.) (citations omitted).

---

[15] *Id.*

[16] R. Doc. No. 4.

[17] R. Doc. No. 14. The Court subsequently ordered additional briefing. R. Doc. No. 19.

Only the third exception to the Anti-Injunction Act is at issue here. This exception, often called the "relitigation exception," "authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court." *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d at 724 (quoting *Smith*, 564 U.S. at 307). The Fifth Circuit has instructed that four requirements must be satisfied in order for the relitigation exception to apply:

> (1) parties in the later action must be identical to or in privity with the parties in the previous action; (2) judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits.

*IDs Prop. Cas. Ins. Co. v. Meeks*, 537 F. App'x 513, 517 (5th Cir. 2013) (quoting *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009)).

"The Supreme Court has established, however, that the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires federal courts to give state judicial proceedings the same full faith and credit they would have in that state, trumps the relitigation exception where a state court has finally determined the res judicata effect of a federal court's order." *Raj v. Tomasetti*, No. 03-1993, 2008 WL 2718905, at *3 (E.D. La. July 11, 2008) (Vance, J.) (citing *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524–25 (1986)). Accordingly, before entering an injunction pursuant to the relitigation exception, the court must "assess whether a state court has issued a final decision that operates to bar re-assessment of the preclusive effect of a prior federal action." *Regions Bank of La. v. Rivet*, 224 F.3d 483, 493 (5th Cir. 2000). In this assessment, the court "look[s] to state law" to determine whether any judgments

issued by the state courts are final judgments that bar reconsideration of the res judicata issue. *Id.*

Even if the relitigation exception applies, the issuance of an injunction against a state court proceeding is "at the discretion of the federal court" and that discretion must be "exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings." *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 407–08 (5th Cir. 2008) (internal quotations and citation omitted). "'[A] complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings.'" *Id.* (quoting *Southern Cal. Petroleum Corp. v. Harper*, 273 F.2d 715, 719 (5th Cir. 1960)).

## III.   ANALYSIS

### a.  Jurisdiction

Kacie asserts that this Court has jurisdiction over the instant proceeding "pursuant to the relitigation exception of the Anti-Injunction Act."[18] Aaron questions whether this Court has jurisdiction to entertain Kacie's request because "the prior judgment from the interpleader action was satisfied" and "there is no remaining interest in protecting a fully satisfied judgment."[19]

Neither party is correct. The Anti-Injunction Act is not jurisdictional. *Regions Bank of La.*, 224 F.3d at 493. "Instead, jurisdiction is based on the original case" and

---

[18] R. Doc. No. 4-1, at 8.
[19] R. Doc. No. 15, at 6.

"[i]t is not necessary for the district court to have jurisdiction over the second suit as an original action." *Id.* Here, it is undisputed that this Court had jurisdiction over the interpleader action.

Generally speaking, "[i]t is well settled that a federal district court can exercise ancillary jurisdiction over a second action in order 'to secure or preserve the fruits and advantages of a judgment or decree rendered' by that court in a prior action." *Royal Ins. Co. of Am. v. Quinn-L Cap. Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992) (quoting *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 868 (5th Cir. 1984)). Because the federal court undisputedly had jurisdiction over the interpleader action, this Court concludes that it has jurisdiction over the instant matter. *Regions Bank of La.*, 224 F.3d at 493.[20]

---

[20] *Goss International Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, which Aaron cites in support of his position, does not change that conclusion. 491 F.3d 355, 364 (8th Cir. 2007). That case involved a district court's injunction against a Japanese court, and it did not implicate the Anti-Injunction Act. *Id.* at 357. The Eighth Circuit concluded that because a "judgment [was] rendered, paid, and satisfied" in the federal court lawsuit, the federal court no longer had ancillary enforcement jurisdiction and could not enjoin litigation in Japan. *Id.* at 365. The Second Circuit disagreed with this holding in *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 129 (2d Cir. 2007) ("[W]e conclude that the District Court retained—and retains—continuing jurisdiction to maintain the anti-foreign-suit injunction even though the federal judgments against Pertamina have been satisfied.").

### b. *Parsons Steel*

The parties originally did not address *Parsons Steel* in their arguments, and the Court ordered additional briefing on this issue. In *Parsons Steel*, the Supreme Court indicated that the relitigation exception is

> limit[ed] . . . to those situations in which the state court has not yet ruled on the merits of the res judicata issue. Once the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision.

*Parsons Steel*, 474 U.S. at 524.

The Fifth Circuit has interpreted this language as precluding an injunction "*only* where 'the state court has *finally rejected* a claim of res judicata . . . .'" *Energy Dev. Corp. v. St. Martin*, 112 F. App'x 952, 960 (5th Cir. 2004) (first emphasis added) (quoting *Parsons Steel*, 474 U.S. at 524). In *Energy Development Corp.*, the state court had "embraced" a claim of res judicata, finding that a litigant's claim was barred, and that determination was pending on appeal. *Id.* The Fifth Circuit determined that "[g]ranting an injunction under these circumstances would therefore not run afoul of the Full Faith and Credit Act or *Parsons Steel*." *Id.*

As in *Energy Development Corp.*, here the state trial court "embraced" the res judicata argument, and that determination is pending on appeal. Following the Fifth Circuit's instruction, therefore, the Court determines that P*arsons Steel* would not bar an injunction in this case.

### c. Relitigation Exception

The Court turns to the relitigation exception prerequisites, and addresses each of them in turn.

#### i. *Privity of Parties*

First, "the parties in the later action must be identical to or in privity with the parties in the previous action." *IDs Prop. Cas. Co.*, 537 F. App'x at 517. Parties are in privity where "the relationship between the one who is a party on the record and the non-party is sufficiently close" to justify application of the principle of preclusion, *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003), and where "the party [to the first proceeding] adequately represented [the party to the second proceeding's] interest in the prior proceeding." *Liberty Mut. Ins. Co. v. Gunderson*, 305 F. App'x 170, 176 (5th Cir. 2008).

To find that a person's interest was adequately represented in a prior proceeding to which they were not a party, there must be "more than a showing of parallel interests." *Prime Ins. Syndicate, Inc. v. Orleans Limousines and Transp.*, No. 07-604, 2007 WL 914177, at *5 (E.D. La. Mar. 23, 2007) (Feldman, J.). Rather, there must be "'an express or implied legal relationship in which the parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.'" *Id.* (quoting *Pollard v. Cockrell*, 578 F.2d 1002, 1009 (5th Cir. 1978)). Where an "identical [factual] issue . . . is inextricably intertwined in both the federal and state lawsuits," privity may be satisfied. *Id.*

9

Kacie asserts that privity is present even though Aaron was not a party to the interpleader litigation because Wayne Breen's other children "adequately represented" his interest in that litigation. In response, Aaron refers the Court[21] to Aaron's brief to the state appellate court in the wrongful death case, which Kacie attached to her complaint. In that brief, Aaron argues that his interests were not adequately represented in the federal lawsuit because "no one was similarly situated with [Aaron], who possesses no interest in the insurance funds considered by the interpleader."[22]

Aaron has not articulated to this Court, however, how his interest in the interpleader litigation differed from that of his half-siblings—indeed, in Aaron's motion to intervene in the interpleader litigation, Aaron sought "to be recognized as legal heir and beneficiary as a 'surviving issue' of the late Wayne E. Breen, who is entitled to his proportionate share of the proceedings *allocated to all other heirs in this proceeding*."[23] Moreover, though the denial of Aaron's motion to intervene in the interpleader litigation was based primarily on its untimeliness, the magistrate judge's order also noted that Wayne Breen's other children would "adequately represent [Aaron's] interest" in the interpleader litigation.[24]

Kacie has asserted, and Aaron has not disputed, that the issue of whether Kacie justifiably killed her husband is central to all three lawsuits. That was the issue

---

[21] *Id.* at 6.
[22] R. Doc. No. 1-12, at 23–24.
[23] E.D. La. Case No. 15-3250, R. Doc. No. 57, at 2–3 (emphasis added).
[24] R. Doc. No. 1-8, at 2.

that Breen's children, including Sean Breen, had to prove in order to prevail in the interpleader action. *Pruco Life Ins. Co.*, 289 F. Supp. 3d at 798. Aaron seeks to prove the same issue in the wrongful death and pension plan cases, albeit under different legal circumstances. Accordingly, because an "identical issue . . . is inextricably intertwined in both the federal and state lawsuits," *Prime Ins. Syndicate*, 2007 WL 914177, at *5, the Court concludes that Aaron's interest was "adequately represented" by Wayne Breen's other children in the interpleader action. *Liberty Mut. Ins. Co.*, 305 F. App'x at 176.

### ii.    *Previous Judgment Rendered by a Court of Competent Jurisdiction*

Neither party disputes that the judgment in the interpleader action was rendered by a court of competent jurisdiction. This prerequisite is satisfied.

### iii.    *Final Judgment on the Merits*

Neither party disputes that the interpleader action ended with a final judgment on the merits. This prerequisite is satisfied.

### iv.    *Same Claim or Cause of Action*

Aaron asserts that the state lawsuits do not involve the same claim or cause of action as that in the federal lawsuit because, though they arise from the same factual circumstances, they involve different statutes which distribute the burden of proof differently.[25] Kacie responds that, because the lawsuits involve the same factual issue—that is, the issue of whether Kacie's killing of her husband was justified—they

---

[25] R. Doc. No. 15, at 5.

involve the same claim or cause of action for purposes of the relitigation exception.[26] Neither party has made it particularly clear to the Court how the issue of justifiability is relevant to the pension plan case, but as neither party disputes that it is so, the Court will accept that proposition.

When determining whether the federal and state lawsuits involve the same claim or cause of action for purposes of the relitigation exception, the Fifth Circuit[27] "use[s] a transactional test . . . under which the critical question is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 709 (5th Cir. 2005) (internal quotation and citation omitted); *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000); *La. Health Serv. & Indem. Co.*, 2017 WL 2256765, at *2.

In *New York Life Insurance v. Gillispie*, which both parties cite, the Fifth Circuit determined that the relitigation exception applied to bar a state-court lawsuit in which the plaintiff attempted to recover her husband's life insurance proceeds in

---

[26] R. Doc. No. 17, at 5–7.

[27] There is some conflict between the Circuits regarding whether this "transactional test" is the appropriate standard for resolving whether two lawsuits raise the same claim or cause of action for purposes of the relitigation exception. Some Circuits apply a stricter "actually litigated" standard under which the relitigation exception only applies to "matters actually decided, not matters that *could have been* brought and decided in previous federal litigation." *Blanchard 1986, Ltd.*, 553 F.3d at 408 n.12 (emphasis in original). The Fifth and Ninth Circuits have endorsed the transactional view. *Id.*; *accord Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14–cv–02081, 2018 WL 646120, at *5 n.6 (E.D. Cal. Jan. 31, 2018) (noting the split, and that the Supreme Court's decision in *Smith* "suggest[s] this exception is limited only to issues actually litigated"). Another section in this district has recently employed the transactional view. *La. Health Serv. & Indem. Co.*, 2017 WL 2256765, at *2.

state court after a federal court had already determined that the husband's death was a suicide, and that the policy excluded coverage for death by suicide. 203 F. 3d at 386. The plaintiff contended that the federal case "merely determined whether [the insurance company] had a contractual duty to pay based on *then-available* evidence" and that the subsequent state lawsuit was not barred because it was based on new evidence. *Id.* at 387 (emphasis in original). The Fifth Circuit rejected this argument, because both lawsuits turned on the exact same factual determination (whether or not the plaintiff's husband died by suicide) and the plaintiff could prevail in the state court only "by convincing the state court that the [previous] federal judgment was in error." *Id.* Here, as in *Gillespie*, the federal and state lawsuits turned on the same factual determination.

Aaron argues that the state lawsuits do not involve the same "claim or cause of action" because the burden of proof on the issue of justifiability is allocated differently than it was in the federal interpleader case. The relitigation exception is "founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). Therefore, the undisputed fact that the issue of whether Kacie was justified in killing her husband was already decided in the federal interpleader action, and is now again disputed in the state lawsuits, supports the conclusion that the state lawsuits present "the same claim or cause of action" as the federal interpleader action. *Vines*, 398 F.3d at 709; *Gillispie*, 203 F.3d at 387; *La. Health Serv. & Indem. Co.*, 2017 WL 2256765, at *2.

### d. Injunctive Relief Factors

In general, a party seeking a temporary restraining order ("TRO") must show: "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 17-491, 2020 WL 10486334, at *4 (E.D. La. Oct. 16, 2020) (Milazzo, J.) (citing *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008)); *Prime Ins. Syndicate, Inc.*, 2007 WL 914177, at *2.

Aaron asserts that Knapp has not demonstrated a threat of irreparable harm, as required to prevail on a request for a TRO, because the only harm she asserts is the "costs of ongoing litigation, delay in receiving funds she believes she is due to receive, and the possibility that the Louisiana [appellate court] might rule against her as to the applicability of res judicata."[28] In her reply to defendant's opposition, she asserts that "any litigation of an issue already litigated to a final judgment in a federal court in a subsequent state court proceeding is irreparable harm."[29] The Fifth Circuit has held that "no independent demonstration of irreparable harm . . . is necessary to win an injunction under the relitigation exception to the Anti-Injunction Act" and that "demonstrating that the state litigation concerns an issue actually decided by the federal courts is sufficient" to demonstrate the harm of the ongoing

---

[28] R. Doc. No 15, at 3 (emphasis omitted).
[29] R. Doc. No. 17, at 7.

state litigation. *Ballenger v. Mobil Oil Corp.*, 138 F. App'x 615, 622 (5th Cir. 2005). Accordingly, the Court rejects Aaron's argument.

However, the Court also notes that Kacie's argument that the state litigation poses a substantial threat of irreparable injury to her if a TRO is not granted is undercut by the fact that she has defended this litigation in the state courts for several years, and did not seek this Court's intervention until shortly before the state appellate court hearing.[30]

Additionally, the Court notes that, beyond the threat of irreparable harm, Kacie has not addressed the factors required for issuance of a TRO. *See Prime Ins. Syndicate, Inc.*, 2007 WL 914177, at *2 (noting that a temporary restraining order "may be granted only if the plaintiff shows" all four factors).

### e.  The Court's Discretion to Enjoin the State Proceedings

"[T]he fact that an injunction *may* issue under the Anti–Injunction Act does not mean that it *must* issue." *Chick Kam Choo*, 486 U.S. at 151. Aaron urges this Court to exercise its discretion and decline to issue a TRO even if the relitigation exception applies.[31]

The issuance of an injunction against a state court proceeding is "at the discretion of the federal court" and that discretion must be "exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings." *Blanchard 1986, Ltd.*, 553 F.3d at 407–08. Moreover, "issuing an injunction under

---

[30] R. Doc. No. 4, at 6.
[31] R. Doc. No. 21, at 3.

the relitigation exception is resorting to heavy artillery" and "every benefit of the doubt goes toward the state court." *Smith*, 564 U.S. at 307. Here, though Fifth Circuit precedent indicates that the relitigation exception does not bar an injunction in this case, the Court finds that there is some concern as to whether injunctive relief is appropriate.

First, the state court lawsuits do not involve the life insurance funds that were contested in federal court. Judgments in those cases will therefore not interfere with the federal court's determination that Kacie was entitled to the life insurance awards.

Second, the lawsuits that Breen requests be enjoined have been pending in the Louisiana courts since 2015. Kacie could have sought an injunction on the basis of *Pruco* years ago, since the Fifth Circuit affirmed *Pruco* in 2018. Plaintiff has not explained why she waited until just before the state appellate court hearings to seek this Court's intervention.

Finally, as discussed in the previous section, the Court is not convinced that Kacie carried her burden to show that she is entitled to a TRO, as she did not address relevant factors.

The res judicata issue has been presented to the state trial courts, and now proceeds to the state appellate courts. Further recourse may "be pursued through appeals in the state court system and certiorari to the Supreme Court." *Raj*, 2008 WL 2718905, at *3. The Court is hesitant to enjoin the state courts at this stage of the proceedings.

Appellate courts have repeatedly affirmed that the trial court is not required to grant an injunction against a state court even where the relitigation exception apparently does not bar one. *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1308 (9th Cir. 2022) (holding that, "[e]ven if the district court could have enjoined" the state court action, it was not an abuse of discretion to decline to do so when "the district court carefully grounded its decision on respect for the state court"); *Kay Co. LLC v. Equitable Production Co.*, 27 F.4th 252, 262 ("In short, the Anti-Injunction Act gives courts discretion to refrain from enforcing its exceptions because of the strength of the Act's general prohibition. . . . The district court . . . was entitled to exercise this discretion." (citations omitted)); *IDs Prop. Cas. Ins. Co.*, 537 F. App'x at 517 ("Assuming, *arguendo*, that this case falls squarely within the parameters of the relitigation exception, we cannot conclude, for that reason alone, that the court abused its discretion.").

For the foregoing reasons, the Court declines to exercise its discretion to enjoin the state court proceedings at this time.

## IV.   CONCLUSION

Accordingly, the motion for a temporary restraining order is **DENIED**.

New Orleans, Louisiana, November 10, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**